## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MOONBUG ENTERTAINMENT LIMITED,
a foreign entity,

        Plaintiff,

    v.

BARRY DEAN LONG, an individual doing
business as KIDS PARTY PROS,

        Defendant.

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT

1.    Plaintiff Moonbug Entertainment Limited's ("Moonbug" or "Plaintiff") mission is to educate young children through its programming, including its hit children's show, Blippi. Defendant Barry Dean Long, doing business as Kids Party Pros, ("Defendant") is infringing Plaintiff's intellectual property rights by using, without authorization, Plaintiff's trademarks, trade dress and copyrights, and doing so in connection with the offering of counterfeit services providing Blippi Show character impersonators. Defendant's infringement is being done willfully to mislead the public and capitalize on children's naiveite by offering counterfeit characters from the Blippi show. Defendant's infringement and counterfeiting activities are harmful to the children, are likely to and have caused confusion, violate Moonbug's various intellectual property rights, and is causing irreparable harm to Plaintiff.

2.    To stop Defendant's counterfeiting and wrongful conduct, Moonbug now brings this Complaint against Defendant for (i) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; (ii) trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iii) false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125; (iv) trademark counterfeiting under Section 32 the Lanham Act, 15 U.S.C. § 1114(1)(b); (v) trafficking in counterfeit services in violation of the Federal Anticounterfeiting Consumer Protection Act, 18 U.S.C. § 2320; (vi) statutory and common law unfair competition in violation of Florida Statutes §§ 501.201 et seq., and (vii) copyright infringement under 17 U.S.C. §§ 502 and 504, and alleges as follows:

## THE PARTIES

3.      Plaintiff Moonbug Entertainment Limited is a private limited company existing under the laws of the United Kingdom.

4.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Barry Dean Long is a resident of the State of Florida and does business under the fictitious business name, Kids Party Pros.

## JURISDICTION AND VENUE

5.      Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) and (b), this Court has subject matter jurisdiction over Plaintiff's claims for relief.

6.      Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental jurisdiction over Plaintiff's state law trademark infringement claim because it is joined with substantial and related claims under the Lanham Act and the Copyright Act. This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because all of Plaintiff's claims arise out of a common nucleus of operative facts.

7.      This Court has personal jurisdiction over Defendant because (i), upon information and belief, Defendant resides in Florida; (ii) Defendant has (a) conducted substantial business in the State of Florida; (b) derived financial benefits from residents of Florida, including by marketing and selling infringing services to residents of Florida and otherwise placing infringing services

into the stream of commerce, with the knowledge or understanding that such services are offered and sold in the State of Florida, including within this District; (c) purposefully availed himself of the privilege of conducting business within the State of Florida; (d) sought protection and benefits from the laws of the State of Florida; and (iii) the causes of action arise directly from the Defendant's business contacts and other activities in the State of Florida.

8.      Venue in this Court exists under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred within this District.

<u>**FACTS COMMON TO ALL CLAIMS FOR RELIEF**</u>

***Moonbug***

9.      Moonbug is a global entertainment company well known for creating and distributing animated and live-action audio-visual content for children and families, including the wildly successful show Blippi (the "Blippi Show"), which was first published in 2014. The Blippi Show is a fun educational children's show that features various characters, including Blippi ("Blippi") and his sidekick, Meekah ("Meekah," and together with Blippi, the "Blippi Characters"). As a result of the enormous success of the Blippi Show, it has expanded from a one actor show into a diversified mega brand. This has included actor diversification (new actors playing Blippi), format extensions, and the launch of original content spin-offs and merchandise.

***The BLIPPI Marks***

10.      Both the Blippi Show and Blippi himself have attained worldwide fame over the years, and the Blippi Show is now streamed by millions of people on various streaming services, including, but not limited to, Netflix, Amazon Prime, Hulu, and Peacock. The Blippi Show can also be streamed on YouTube, on which the Blippi Show has over 20 million subscribers. In addition, Blippi has over 775,000 Instagram followers, over 737,000 Facebook followers, and 1.5

million TikTok followers. The fame of the Blippi Show and Blippi have been catapulted even more from the live show global tour entitled *Blippi: The Wonderful World Tour*, which, in 2023 alone, sold over 165,000 tickets across 90 cities just in North America with multiple sold-out performances. With over 70 scheduled shows on the 2024 tour, the success and recognition of the Blippi Show and Blippi is only continuing to grow. Similarly, Meekah, Blippi's sidekick educator on the Blippi Show, has seen comparable success in the short time she has been part of the show.

11.     To protect the investment in and to the Blippi brand, Moonbug owns U.S. trademark registrations and applications for the marks BLIPPI and MEEKAH, and variations thereof, including, but not limited to, the following (collectively, the "BLIPPI Marks").:

| Mark | Registration/ Serial No. | Filing Date/ Registration Date | International Classes |
|---|---|---|---|
| BLIPPI | Reg. No. 5,249,736 | Filing Date: July 25, 2017<br><br>Registration Date: July 25, 2017 | 041 |
| BLIPPI | Reg. No. 5,345,563 | Filing Date: April 21, 2017<br><br>Registration Date: November 28, 2017 | 009 |
| BLIPPI | Reg. No. 5,335,204 | Filing Date: April 20, 2017<br><br>Registration Date: November 14, 2017 | 016 |
| BLIPPI | Reg. No. 5,335,209 | Filing Date: April 20, 2017<br><br>Registration Date: November 14, 2017 | 025 |

| BLIPPI | Reg. No. 5,333,930 | Filing Date: March 28, 2017<br><br>Registration Date: November 14, 2017 | 028 |
|--------|--------|--------|--------|
| BLIPPI | Reg. No. 6,889,959 | Filing Date: July 31, 2019<br><br>Registration Date: November 1, 2022 | 018, 020, 021, 024, |
| BLIPPI | Reg. No. 7,430,058 | Filing Date: July 29, 2022<br><br>Registration Date: June 25, 2024 | 018, 020, 021, 024, 027 |
| BLIPPI | Ser. No. 97/429,181 | Filing Date: May 25, 2022 | 003, 005, 008, 010, 011, 012, 014, 015, 026, 029, 030, 032, 035, 042, 043 |
| MEEKAH | Reg. No. 7,484,277 | Filing Date: July 8, 2021<br><br>Registration Date: August 27, 2024 | 009, 016, 028, 041 |

True and correct copies of the registration certificates for each of the registered BLIPPI Marks are attached as **Exhibit 1**.

12.     As of the date of this Complaint, Moonbug is the exclusive owner of all marks registered and applied for registration with the United States Patent and Trademark Office that include the terms "Blippi" or "Meekah."

13.     Moonbug's use of the BLIPPI Marks have been and is extensive, continuous, and exclusive.[1]

---

[1] The BLIPPI Marks have been in use continuously since 2014. Moonbug acquired all rights to the BLIPPI Marks and the Blippi Show brand in 2020.

14.     Moonbug has made, and continues to make, substantial investments of time, effort, and money in the development, production, and promotion of the Blippi Show, Blippi, Meekah, and the BLIPPI Marks.

15.     The BLIPPI Marks are unique and distinctive and, as such, the marks designate a single source of origin. Specifically, the term "blippi" is not a real word included in any English dictionary and was made famous only through the Blippi Show, Blippi, and using the BLIPPI Marks.

16.     As a result of Moonbug's widespread use of the BLIPPI Marks through the Blippi Show, Blippi and Meekah, the BLIPPI Marks have come to be recognized by the public as being associated exclusively with Moonbug and the Blippi Show.

17.     Moonbug expends substantial effort and expense to protect the BLIPPI Marks' distinctiveness in the marketplace and to police unauthorized use of the BLIPPI Marks.

18.     The BLIPPI Marks are a property right of incalculable value as they have, for the last decade, enjoyed substantial fame as a result of the favorable general public acceptance and recognition of the Blippi Show and the Blippi brand.

### ***The BLIPPI Trade Dress***

19.     Blippi himself is immediately recognizable through his signature blue and orange attire, which consists of a blue button up dress shirt (with the sleeves rolled up to the elbow), orange suspenders, orange bowtie, orange glasses, orange and blue hat, blue shoes that generally have orange stripes and laces, together with grey or light blue pants (the "BLIPPI Trade Dress"). Blippi rarely, if ever, strays from this uniform, which is what distinguishes him from the other characters of the Blippi Show, who wear similar clothes, but with different colors. For example, Juca, another character on the Blippi Show, is recognizable through an identical attire but in a blue

and yellow color combination.

 

20.     Given the longevity and exclusivity of the BLIPPI Trade Dress, the BLIPPI Trade Dress has acquired distinctiveness, that is, a secondary meaning pointing to Moonbug as the source and origin of Blippi and the Blippi Show. As such, the BLIPPI Trade Dress is inherently distinctive.

### *The MEEKAH Trade Dress*

21.     Similarly, Meekah is immediately recognizable through her signature purple and yellow attire, which consists of a purple t-shirt with yellow lining and a yellow pocket with an "M" on it, a yellow headband with a ribbon, blue jeans, and a Blippi-themed circle waist bag in blue and orange (the "MEEKAH Trade Dress"). Meekah rarely, if ever, strays from this uniform, which is what distinguishes her from the other characters of the Blippi Show.

- 7 –

 

22.     Given the longevity and exclusivity of the MEEKAH Trade Dress, the MEEKAH Trade Dress has acquired distinctiveness, that is, a secondary meaning in indicating Moonbug as the source and origin of Meekah and the Blippi Show. As such, the MEEKAH Trade Dress is inherently distinctive.

### *Moonbug's Copyrights*

23.     Moonbug owns the copyrights to the Blippi Show, each individual episode or video of the Blippi Show, the Blippi and Meekah characters, and all the other characters featured on the Blippi Show.

24.     Moonbug is also the owner of the following U.S. Copyright Registrations (collectively, the "Moonbug Copyrights").

| Title of Work | Registration No. |
|---|---|
| Blippi Explores The Discovery Children's Museum in Las Vegas! | Fun and Educational Videos For Kids | PA 2-481-676 |

| Learn to Count MONSTER TRUCKS! Numbers 1-10 | PA 2-481-675 |

True and correct copies of the above referenced Copyright Registrations are attached as **Exhibit 2**.

25.     Moonbug owns the rights to the Moonbug Copyrights and the characters therein, including the Blippi and Meekah characters.

### *Defendant's Willful Infringement of BLIPPI and MEEKAH*

26.     Upon information and belief, Defendant owns and operates the business Kids Party Pros based out of Orlando, Florida ("KPP"). Kids Party Pros purports to offer character rental services for various occasions, such as birthday parties and corporate events.

27.     Upon information and belief, as part of the KPP business, Defendant runs and operates the KPP website at the domain name, www.kidspartypros.com (the "Website").

28.     Since at least February 2021, Defendant has offered counterfeit and infringing Blippi and Meekah character rental services on the Website.

29.     Defendant knowingly and intentionally took advantage – and continues to take advantage – of the BLIPPI Marks and the fame and recognition attached to them by featuring **"Top Rated Blippi"** professional performers for booking with a large image of a Blippi impersonator on the homepage of the Website as follows:



30.     Defendant further uses Blippi's image and likeness in the Website banner and even

has an entire page on the Website dedicated to a "Blippi Impersonator" (the "Blippi Webpage"),

presumably due to Blippi's success and popular demand for his character services, and which page

also features Meekah as an offered character. A true and correct printout of the Blippi Webpage is

attached as **Exhibit 3**.

31.     The Blippi Webpage advertises Defendant's counterfeit Blippi impersonator as the

"nation[']s top Blippi impersonator" with "over 1000 events and live shows with 5* reviews." This

is followed by a video of Defendant's counterfeit Blippi and Meekah impersonators doing a live

performance of a Blippi song from the Blippi Show on a stage before a crowd of young children.





32.     The Blippi Webpage also states that Defendant's counterfeit Blippi impersonator

has "traveled nationwide to events, parties and done hundreds of birthday parties" as follows:

**BB AS BLIPPI! THE NATIONS NUMBER 1 BLIPPI IMPERSONATOR! BRINGS THE STYLE, PERSONALITY, MOVES AND EXCITEMENT OF YOUR KIDS FAVORITE YOUTUBE SENSATION BLIPPI! HE HAS TRAVELED NATIONWIDE TO EVENTS, PARTIES AND DONE HUNDREDS OF BIRTHDAY PARTIES! HE IS A SENSATION! BOOK NOW LIMITED AVAILABILITY!**

He's a sensation! Book now while he's still available, as his schedule fills up quickly!" Blippi for hire Orlando.

 

**BLIPPI AND MEEKAH**

33.     Throughout the Blippi Webpage, Defendant demonstrates his knowledge of not only Blippi, Meekah, the Blippi Show, and the BLIPPI Marks, but also of the contents of the Blippi Show itself. Under one image in the Blippi Webpage, Defendant describes Blippi as "a popular children's entertainer and YouTube personality who creates educational videos for preschoolers. He is known for his distinctive orange and blue outfit, and his energetic and enthusiastic style of teaching kids about the world around them. Blippi's videos cover a wide range of topics, from learning about colors and shapes to exploring different types of vehicles and animals. He has become a beloved figure in the world of children's entertainment and has millions of fans around the world." *See* **Exhibit 3**.

34.     Defendant further specifically references various songs from the Blippi Show, such as the song "I'm an Excavator." *See* **Exhibit 3**.

– 12 –

35.     Defendant's use of the BLIPPI Marks, Blippi and Meekah characters, BLIPPI Trade Dress, MEEKAH Trade Dress, and any other references to the Blippi Show and content thereof, is without authorization.

36.     Upon information and belief, Defendant's use of the BLIPPI Marks, Blippi and Meekah characters, BLIPPI Trade Dress, MEEKAH Trade Dress, and any other references to the Blippi Show and content thereof is willful and with the intent to trade off of the fame and goodwill that Moonbug has built in the Blippi brand.

### *Harm to Moonbug and the Public Through Actual Confusion*

37.     Defendant's use of the BLIPPI Marks or any similar designation thereto, creates a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Defendant's goods and services, and is likely to falsely suggest a sponsorship, connection, license, or association of Defendant with Moonbug and the real Blippi and the Blippi Show.

38.     Defendant's Website demonstrates numerous instances of actual confusion with videos of the unauthorized Blippi and Meekah impersonators performing before crowds of children on the Blippi Webpage.

39.     Upon information and belief, the Website intends to create actual confusion by offering unauthorized Blippi and Meekah impersonators, which intend to fully and completely embody the characters being impersonated to the point where the difference is unrecognizable. Defendant's bad intent is magnified since the target audience is a group of young, impressionable children, at which point, it is generally not difficult to create actual confusion in their minds.

### *Defendant's Continued Infringing Use of the BLIPPI Marks*

40.     Moonbug became aware of Defendant's unauthorized use of the BLIPPI Marks and his promotion of infringing Blippi and Meekah impersonators with the intent to capitalize on the fame and recognition associated with the BLIPPI Marks and the Blippi Show.

41.    As demonstrated throughout the Website and specifically the Blippi Webpage, Defendant admits his knowledge of the Blippi Show and Blippi's fame and success, which he uses without authorization to create more business.

42.    Defendant's continued unauthorized use of the BLIPPI Marks, Blippi and Meekah characters, BLIPPI Trade Dress, and MEEKAH Trade Dress, has irreparably harmed Moonbug and the Blippi brand Moonbug has worked so hard to establish.

43.    Similarly, Defendant's continued use of the BLIPPI Marks, Blippi and Meekah characters, BLIPPI Trade Dress, and MEEKAH Trade Dress,  has irreparably harmed the public, which has an inherent interest in being free from the confusion, mistake, and deception likely to arise and actually caused by Defendant.

### *Moonbug's Attempts to Resolve This Dispute Amicably*

44.    On April 5, 2024, Moonbug sent Defendant a letter demanding that Defendant immediately cease and desist his unauthorized use of the BLIPPI Marks on the Website and further cease and desist his counterfeit services offering Blippi and Meekah impersonators. Moonbug requested a response by April 15, 2024, but received no response to the letter.

45.    On May 6, 2024, Moonbug sent Defendant another letter, reiterating its demands in a final attempt to resolve this dispute without court intervention. Moonbug emailed this letter to two different email addresses it believed to belong to Defendant and had the letter personally served to Defendant's address. The process server confirmed that Defendant resided at the address at which the letter was served. Moonbug requested a response by May 20, 2024.

46.    On October 1, 2024, Moonbug made a final attempt to avoid court intervention and sent yet another letter to Defendant regarding the ongoing infringement. Moonbug requested a response by October 8, 2024. Kids Party Pros responded on October 8, 2024 but would not agree

to cease infringing use of Moonbug's trademarks, copyrights or trade dress. To date, Defendant's infringement continues despite Moonbug's many efforts to amicably resolve the matter.

47.     Defendant's intentional defiance of Moonbug's rights and efforts to resolve this dispute have forced Moonbug to bring this action.

## FIRST CLAIM OF RELIEF

**Trademark Infringement**

**15 U.S.C. § 1114**

48.     Moonbug incorporates by reference the factual allegations set forth above.

49.     Moonbug owns the BLIPPI Marks, which were first used in or around April 2014, when the first Blippi Show episode was released.

50.     As of the date of this Complaint, Defendant has and continues to use the BLIPPI Marks without authorization, and Defendant's use of the BLIPPI Marks came after Moonbug's first use and Defendant intentionally and knowingly infringes upon the BLIPPI Marks and the name, image, and likeness of the Blippi and Meekah characters from the Blippi Show.

51.     Further, while Defendant is based in Florida, the Blippi Webpage purports to have provided Blippi impersonator appearances nationwide.

52.     Defendant is promoting, advertising, distributing, selling, and/or offering for sale the service of providing Blippi and Meekah impersonators in interstate commerce using the BLIPPI Marks.

53.     Defendant's use of the BLIPPI Marks in connection with services to offer live impersonators for special events is likely to cause confusion in the marketplace such that it will likely cause others to believe that there is a relationship between Defendant and Moonbug, when there is not.

- 15 –

54.     Defendant's infringement of the BLIPPI Marks is willful, and done with knowledge that Defendant's services, which are identical to Moonbug's services, are likely to cause confusion in the marketplace.

55.     Defendant's infringement of the BLIPPI Marks is done without Moonbug's authorization or consent.

56.     The impersonator services offered by Defendant are, by definition, identical to the Blippi and Meekah characters in the Blippi Show.

57.     Through his use of the BLIPPI Marks, Defendant intended to, and did actually confuse and mislead Moonbug's consumers into believing, and misrepresented and created the false impression, that Moonbug authorized, originated, sponsored, approved, licensed, or participated in Defendant's use of the BLIPPI Marks.

58.     As a direct and proximate result of Defendant's wrongful conduct, Moonbug has been and will continue to be damaged. Moonbug has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the BLIPPI Marks and injury and interference to its business and customer relationships, specifically as it relates to the Blippi Show and which can be shown through the actual instances of confusion by the target consumers of the Blippi Show, the children.

59.     Moonbug has no adequate remedy at law and, if Defendant's actions are not enjoined, Moonbug will continue to suffer irreparable harm to its reputation and the goodwill of its well-known BLIPPI Marks.

60.     Unless enjoined, Defendant's continued infringement will continue to harm Moonbug's valuable registered trademark rights.

61.     Pursuant to 15 U.S.C. § 1117, Moonbug is also entitled to recover damages in an

amount to be determined at trial, profits made by Defendant on sales of its goods and services, and the costs of this action.

62.     Furthermore, Defendant's actions were undertaken willfully with the knowledge that Moonbug was the rightful owner of the BLIPPI Marks and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Moonbug to recover additional treble damages and reasonable attorneys' fees under 15 U.S.C. § 1117.

## SECOND CLAIM OF RELIEF

### Trade Dress Infringement

### 15 U.S.C. § 1125

63.     Moonbug incorporates by reference the factual allegations set forth above.

64.     Moonbug is the owner of the BLIPPI Trade Dress.

65.     Given the longevity and exclusivity of Moonbug's use of the BLIPPI Trade Dress, the BLIPPI Trade Dress has acquired distinctiveness, that is, a secondary meaning indicating Moonbug as the source and originating from the Blippi Show.

66.     Defendant is, without authorization, promoting, advertising, distributing, selling, and/or offering for sale the service of providing Blippi impersonator appearances in interstate commerce using the BLIPPI Trade Dress.

67.     Defendant's unauthorized use of the BLIPPI Trade Dress in connection with services to offer live impersonators for special events is likely to cause confusion in the marketplace such that it will likely cause consumers to believe that there is a relationship between Defendant and Moonbug, when there is not.

68.     Defendant's infringement of the BLIPPI Trade Dress is willful, and done with knowledge that Defendant's services, which are identical to Moonbug's services, are likely to

cause confusion in the marketplace.

69.     Defendant's infringement of the BLIPPI Trade Dress is done without Moonbug's authorization or consent.

70.     The impersonator services offered by Defendant are, by definition, identical to the Blippi characters in the Blippi Show.

71.     Through his use of the BLIPPI Trade Dress, Defendant intended to, and did actually confuse and mislead consumers into believing, and misrepresented and created the false impression, that Moonbug authorized, originated, sponsored, approved, licensed, or participated in Defendant's services and/or the Defendant's use of the BLIPPI Trade Dress.

72.     As a direct and proximate result of Defendant's wrongful conduct, Moonbug has been and will continue to be damaged. Moonbug has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the BLIPPI Trade Dress and injury and interference to its business and customer relationships, specifically as it relates to the Blippi Show and which can be shown through the actual instances of confusion by the target consumers of the Blippi Show, the children.

73.     Moonbug has no adequate remedy at law and, if Defendant's actions are not enjoined, Moonbug will continue to suffer irreparable harm to its reputation and the goodwill of its well-known BLIPPI Trade Dress.

74.     Unless enjoined, Defendant's continued infringement will continue to harm Moonbug's valuable trade dress rights.

75.     Pursuant to 15 U.S.C. § 1117, Moonbug is also entitled to recover damages in an amount to be determined at trial, profits made by Defendant on sales of its goods and services, and the costs of this action.

76.     Furthermore, Defendant's actions were undertaken willfully with the knowledge that Moonbug was the rightful owner and already using the BLIPPI Trade Dress and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Moonbug to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## THIRD CLAIM OF RELIEF

### Trade Dress Infringement

### 15 U.S.C. § 1125

77.     Moonbug incorporates by reference the factual allegations set forth above.

78.     Moonbug is the owner of the MEEKAH Trade Dress.

79.     Given the longevity and exclusivity of Moonbug's use of the MEEKAH Trade Dress, the MEEKAH Trade Dress has acquired distinctiveness, that is, a secondary meaning indicating Moonbug as the source and originating from the Blippi Show.

80.     Defendant is, without authorization, promoting, advertising, distributing, selling, and/or offering for sale the service of providing Meekah impersonator appearances in interstate commerce using the MEEKAH Trade Dress.

81.     Defendant's unauthorized use of the MEEKAH Trade Dress in connection with services to offer live impersonators for special events is likely to cause confusion in the marketplace such that it will likely cause consumers to believe that there is a relationship between Defendant and Moonbug, when there is not.

82.     Defendant's infringement of the MEEKAH Trade Dress is willful, and done with knowledge that Defendant's services, which are identical to Moonbug's services, are likely to cause confusion in the marketplace.

83.     Defendant's infringement of the MEEKAH Trade Dress is done without Moonbug's authorization or consent.

84.     The impersonator services offered by Defendant are, by definition, identical to the Meekah character in the Blippi Show.

85.     Through his use of the MEEKAH Trade Dress, Defendant intended to, and did actually confuse and mislead consumers into believing, and misrepresented and created the false impression, that Moonbug authorized, originated, sponsored, approved, licensed, or participated in Defendant's services and/or the Defendant's use of the MEEKAH Trade Dress.

86.     As a direct and proximate result of Defendant's wrongful conduct, Moonbug has been and will continue to be damaged. Moonbug has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the MEEKAH Trade Dress, and injury and interference to its business and customer relationships, specifically as it relates to the Blippi Show and which can be shown through the actual instances of confusion by the target consumers of the Blippi Show, the children.

87.     Moonbug has no adequate remedy at law and, if Defendant's actions are not enjoined, Moonbug will continue to suffer irreparable harm to its reputation and the goodwill of its well-known MEEKAH Trade Dress.

88.     Unless enjoined, Defendant's continued infringement will continue to harm Moonbug's valuable trade dress rights.

89.     Pursuant to 15 U.S.C. § 1117, Moonbug is also entitled to recover damages in an amount to be determined at trial, profits made by Defendant on sales of its goods and services, and the costs of this action.

90.     Furthermore, Defendant's actions were undertaken willfully with the knowledge

that Moonbug was the rightful owner and already using the MEEKAH Trade Dress, and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Moonbug to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## FOURTH CLAIM OF RELIEF

### False Designation of Origin

### 15 U.S.C. § 1125

91.     Moonbug incorporates by reference the factual allegations set forth above.

92.     Moonbug owns the BLIPPI Marks, which were first used in or about April 2014, when the first Blippi Show episode was released.

93.     Defendant is promoting, advertising, distributing, selling, and/or offering services including providing Blippi Show character impersonators in interstate commerce.

94.     Defendant's unauthorized use of the BLIPPI Marks in connection with the promotion, advertisement, distribution, sale or offering the service of providing Blippi Show character impersonators constitutes false designation of origin, false or misleading description of fact, and/or false or misleading representations of fact.

95.     Defendant's unauthorized use of the BLIPPI Marks in connection with the promotion, advertisement, distribution, sale or offering the service of providing Blippi Show character impersonators is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant's services with Moonbug's authentic services.

96.     Defendant's unauthorized use of the BLIPPI Marks in connection with the promotion, advertisement, distribution, sale or offering the service of providing Blippi Show character impersonators is likely to cause confusion, or to cause mistake, or to deceive as to the

origin, sponsorship, or approval of Defendant's services by Moonbug.

97.     As a direct and proximate result of Defendant's wrongful conduct, Moonbug has been and will continue to be damaged. Moonbug has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the BLIPPI Marks and injury and interference to its business and customer relationships, specifically as it relates to the Blippi Show and which can be shown through the actual instances of confusion by the target consumers of the Blippi Show, the children.

98.     Moonbug has no adequate remedy at law and, if Defendant's actions are not enjoined, Moonbug will continue to suffer irreparable harm to its reputation and the goodwill of its well-known BLIPPI Marks.

99.     Unless enjoined, Defendant's continued infringement will continue to harm Moonbug's valuable trademark rights.

## FIFTH CLAIM OF RELIEF

### Trafficking in Counterfeit Services

### 15 U.S.C. § 1114

100.     Moonbug incorporates by reference the factual allegations set forth above.

101.     This is a trademark infringement action against Defendant based on his unauthorized use in commerce of counterfeit imitations of the federally registered BLIPPI Marks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods and services, specifically the service of providing Blippi Show character impersonator appearances.

102.     The BLIPPI Marks are highly distinctive marks and consumers have come to expect the highest quality from Moonbug produced or marketed goods and services offered under the

BLIPPI Marks.

103.    Defendant has sold, offered to sell, promoted, marketed, distributed, and advertised, and is still selling, offering to sell, marketing, distributing, and advertising the service of providing Blippi Show character impersonator appearances under the BLIPPI Marks, without Moonbug's authorization or permission.

104.    Moonbug is the exclusive owner of the BLIPPI Marks and its   United States Trademark Registrations for the BLIPPI Marks (Exhibit 1) are in full force and effect.

105.    On information and belief, Defendant had knowledge of Moonbug's prior rights in and to the BLIPPI Marks prior to Defendant's infringing use and is willfully infringing and intentionally offering counterfeit services in connection with the BLIPPI Marks.

106.    Defendant's willful, intentional, and unauthorized use of the BLIPPI Marks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of Defendant's infringing and counterfeit services.

107.    Defendant's activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

108.    Moonbug has no adequate remedy at law and, if Defendant's actions are not enjoined, Moonbug will continue to suffer irreparable harm to its reputation and the goodwill of its well-known BLIPPI Marks.

109.    The injuries and damages sustained by Moonbug have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit services of providing Blippi Show character impersonator appearances under the BLIPPI Marks without Moonbug's permission.

## SIXTH CLAIM OF RELIEF

### Trafficking in Counterfeit Services

### 18 U.S.C. § 2320

110.    Moonbug incorporates by reference the factual allegations set forth above.

111.    Moonbug owns the BLIPPI Marks, including the registered marks identified in **Exhibit 1**.

112.    Defendant, without authorization, has and continues to use the BLIPPI Marks to offer counterfeit services.

113.    Defendant's use of the BLIPPI Marks constitute a violation of the Federal Anticounterfeiting Consumer Protection Act, 18 U.S.C. § 2320 as the counterfeit marks utilized by Defendant are identical to Moonbug's registered BLIPPI Marks.

114.    Defendant is promoting, advertising, distributing, selling, and/or offering for sale the service of providing Blippi Show character impersonator appearances in interstate commerce.

115.    Defendant's actions in connection with the use of the BLIPPI Marks were undertaken willfully with the knowledge of Moonbug's prior rights in and to the BLIPPI Marks and with the intention of causing confusion, mistake, or deception, making this an exceptional case.

116.    As a direct and proximate result of Defendant's wrongful conduct, Moonbug has been and will continue to be damaged.

117.    Defendant's willful acts entitle Moonbug, at the very least, to the maximum statutory penalties provided under 18 U.S.C. § 2320(b)(1)(A).

118.    Unless enjoined, Defendant's continued infringement will continue to harm Moonbug's valuable registered trademark rights.

## SEVENTH CLAIM OF RELIEF

### Statutory and Common Law Unfair Competition

### F.S. §§ 501.201 et seq.

119.    Moonbug incorporates by reference the factual allegations set forth above.

120.    Florida Statute section 501.204 provides that "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are … declared unlawful."

121.    Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), sections 501.201-.213, are intended to "protect . . . legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2).

122.    By using the BLIPPI Marks and offering counterfeit services of Blippi and Meekah impersonators, Defendant is likely to and has deceived consumers and caused actual damage to Moonbug, specifically to the BLIPPI Marks, the Blippi brand and the Blippi Show.

## EIGHTH CLAIM OF RELIEF

### Copyright Infringement

### 17 U.S.C. §§ 502, 504

123.    Moonbug incorporates by reference the factual allegations set forth above.

124.    Moonbug owns the copyright on the Blippi Show, each individual episode or video of the Blippi Show, Blippi, Meekah, and all the other characters featured on the Blippi Show.

125.    Moonbug owns Copyright Registration No. PA 2-481-676 ('676 Copyright) for the work entitled "Blippi Explores The Discovery Children's Museum in Las Vegas! | Fun and Educational Videos For Kids" as well as the characters contained therein, including Blippi (the

"'676 Copyright"). A true and correct copy of the registration for the '676 Copyright is attached hereto as **Exhibit 2**.

126.    Moonbug owns the '676 Copyright and the characters therein, including Blippi and Meekah, which Defendant illegally and improperly reproduced and distributed.

127.    Defendant copied, reproduced, and distributed the '676 Copyright on the Website and through its services of offering Blippi Show character impersonators.

128.    Defendant did not have authority or license to copy and/or display Moonbug's works.

129.    Defendant infringed on the '676 Copyright by reproducing and distributing works through Defendant's Website without approval, authorization, or license of Moonbug.

130.    Defendant knew or reasonably should have known he did not have permission to exploit Moonbug's works, including the '676 Copyright or the content therein, on the Website or as part of his offered services for impersonators and further knew or should have known his acts constituted copyright infringement.

131.    Defendant engaged in intentional, knowing, negligent, or willfully blind conduct sufficient to demonstrate he engaged actively in the improper collection and distribution of Moonbug's copyrighted works, including the '676 Copyright.

132.    The substance, quantity, and quality of Moonbug's copyrighted works increased the attractiveness of Defendant's Website and services to his customers and increased KPP's engagement and revenues.

133.    Defendant's conduct was willful within the meaning of 17 U.S.C. § 101, et seq. At a minimum, Defendant acted with willful blindness and reckless disregard of Moonbug's registered copyrights, including the '676 Copyright.

134.    Because of his wrongful conduct, Defendant is liable to Moonbug for copyright infringement. Moonbug suffers and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

135.    Moonbug seeks to recover damages, including readily ascertainable direct losses and all profits Defendant made by his wrongful conduct. 17 U.S.C. § 504. Alternatively, the law permits Moonbug to recover statutory damages. 17 U.S.C. § 504(c).

136.    Because of Defendant's willful infringement, the law permits enhancement of the allowable statutory damages. 17 U.S.C. § 504(c)(2).

137.    The law permits Moonbug injunctive relief. 17 U.S.C. § 502. Further, the law permits a Court Order impounding any and all infringing materials. 17 U.S.C. § 503.

## NINTH CLAIM OF RELIEF

### Copyright Infringement

### 17 U.S.C. §§ 502, 504

138.    Moonbug incorporates by reference the factual allegations set forth above.

139.    Moonbug holds the copyright on the Blippi Show, each individual episode or video of the Blippi Show, Blippi, Meekah, and all the other characters featured on the Blippi Show.

140.    Moonbug owns Copyright Registration No. PA 2-481-675 for the work entitled "Learn to Count MONSTER TRUCKS! Numbers 1-10" as well as the characters contained therein, including Blippi (the "'675 Copyright"). A true and correct copy of the registration for the '675 Copyright is attached hereto as **Exhibit 2**.

141.    Moonbug owns the '675 Copyright and the characters therein, including Blippi and Meekah, which Defendant illegally and improperly reproduced and distributed.

142.    Defendant copied, reproduced, and distributed the '675 Copyright on the Website

and through its services of offering Blippi Show character impersonators.

143.    Defendant did not have authority or license to copy and/or display Moonbug's works.

144.    Defendant infringed on the '675 Copyright by reproducing and distributing works through Defendant's Website without approval, authorization, or license of Moonbug.

145.    Defendant knew or reasonably should have known he did not have permission to exploit Moonbug's works, including the '675 Copyright or the content therein, on the Website or as part of his offered services for impersonators and further knew or should have known his acts constituted copyright infringement.

146.    Defendant engaged in intentional, knowing, negligent, or willfully blind conduct sufficient to demonstrate he engaged actively in the improper collection and distribution of Moonbug's copyrighted works, including the '675 Copyright.

147.    The substance, quantity, and quality of Moonbug's copyrighted works increased the attractiveness of Defendant's Website and services to his customers and increased KPP's engagement and revenues.

148.    Defendant's conduct was willful within the meaning of 17 U.S.C. § 101, et seq. At a minimum, Defendant acted with willful blindness and reckless disregard of Moonbug's registered copyrights, including the '675 Copyright.

149.    Because of his wrongful conduct, Defendant is liable to Moonbug for copyright infringement. Moonbug suffers and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

150.    Moonbug seeks to recover damages, including readily ascertainable direct losses and all profits Defendant made by his wrongful conduct. 17 U.S.C. § 504. Alternatively, the law

permits Moonbug to recover statutory damages. 17 U.S.C. § 504(c).

151.    Because of Defendant's willful infringement, the law permits enhancement of the allowable statutory damages. 17 U.S.C. § 504(c) (2).

152.    The law permits Moonbug injunctive relief. 17 U.S.C. § 502. Further, the law permits a Court Order impounding any and all infringing materials. 17 U.S.C. § 503.

**PRAYER**

WHEREFORE, Plaintiff prays for the following relief:

1.    An injunction ordering Defendant and its officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, to:

     a)    cease all use and never use the BLIPPI Marks, or any other mark that includes any part of the BLIPPI Marks, or any other mark likely to cause confusion with the BLIPPI Marks, in connection with the promotion, advertising, offering for sale, or sale, of any goods or services;

     b)    cease all use and never use the BLIPPI Trade Dress, or any other mark that includes any part of the BLIPPI Trade Dress, or any other mark likely to cause confusion with the BLIPPI Trade Dress, in connection with the promotion, advertising, offering for sale, or sale, of any goods or services;

     c)    cease all use and never use the MEEKAH Trade Dress, or any other mark that includes any part of the MEEKAH Trade Dress, or any other mark likely to cause confusion with the MEEKAH Trade Dress, in connection with the promotion, advertising, offering for sale, or sale, of any goods or services;

d) never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that Defendant, or any of his goods or services, are related to, authorized, or sponsored by Moonbug;

e) cease any and all use of Moonbug's copyrighted works, including the content of the Moonbug Copyrights and all images, with Blippi, Meekah, or any other content from the Blippi Show or that use the BLIPPI Marks; and

f) cease all use of the name, image, and likeness of Blippi, Meekah, and any other character from the Blippi Show for any reason, including, but no limited to, as an offered service for an impersonator.

2.   An order under 15 U.S.C. § 1116(a), directing Defendant to file with the Court and serve on Moonbug's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

3.   An order finding that, by the acts complained of above, Defendant has infringed on Moonbug's trademarks in violation of 15 U.S.C. § 1114.

4.   An order finding that, by the acts complained of above, Defendant has infringed on Moonbug's trademarks and trade dress in violation of 15 U.S.C. § 1125.

5.   An order finding that, by the acts complained of above, Defendant has falsely designated the origin of the goods and services he offers in violation of 15 U.S.C. § 1125.

6.   An order finding that, by the acts complained of above, Defendant trafficked in counterfeit services in violation of 15 U.S.C. § 1114.

7.   An order finding that, by the acts complained of above, Defendant trafficked in counterfeit services in violation of 18 U.S.C. § 2320.

8.     An order finding that, by the acts complained of above, Defendant has unfairly competed with Moonbug under Florida Statue section 502.201 et seq., and common law.

9.     An order finding that, by the acts complained of above, Defendant has infringed the '675 Copyright in violation of 17 U.S.C. §§ 502 and 504.

10.     An order finding that, by the acts complained of above, Defendant has infringed the '676 Copyright in violation of 17 U.S.C. §§ 502 and 504.

11.     That Defendant account for and pay to Plaintiff all profits realized by Defendant because of Defendant's unlawful acts and that the amount of damages for infringement of the BLIPPI Marks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

12.     In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting under 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the BLIPPI Marks.

13.     An order awarding Moonbug's actual damages, as well as all of Defendant's profits or gains of any kind from his acts of trademark infringement, including a trebling of those damages.

14.     An order awarding Moonbug any statutory or other damages available under 17 U.S.C. § 101, et seq., and any fees and costs otherwise available.

15.     An order finding that this is an exceptional case and awarding Moonbug its reasonable attorneys' fees.

16.     An order awarding Moonbug all of its costs, disbursements, and other expenses incurred due to Defendant's unlawful conduct.

17.     An order awarding Moonbug such other relief as the Court deems appropriate.

Dated: October 18, 2024                    FOX ROTHSCHILD LLP

                                           */s/ Adam Wolek*
                                           Adam Wolek (Fla. Bar No. 1033265)
                                           777 South Flagler Drive
                                           Suite 1700, West Tower
                                           West Palm Beach, FL 33401
                                           Tel: 561.835.9600
                                           Fax: 561.835.9602
                                           awolek@foxrothschild.com

                                           *Attorneys for Plaintiff*
                                           Moonbug Entertainment Limited