**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MOONBUG ENTERTAINMENT
LTD.,

          Plaintiff,

v.                                                                          Case No:   6:24-cv-1876-CEM-LHP

BARRY DEAN LONG,

          Defendant

---

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

Before the Court is Plaintiff's Renewed Motion for Default Judgment, Permanent Injunction, and Attorneys' Fees and Costs.  Doc. No. 27.  The motion has been referred to the undersigned and is ripe for review.   For reasons discussed herein, the undersigned will respectfully recommend that the motion (Doc. No. 27) be granted in part and denied in part.

## I.   BACKGROUND.

Plaintiff Moonbug Entertainment Limited instituted this action against Defendant Barry Dean Long, an individual doing business as Kids Party Pros, on October 18, 2024.  Doc. No. 1.  Plaintiff alleges trademark infringement, trade dress infringement, and false designation of origin claims under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.* (Counts 1-4); claims for trafficking in counterfeit services

under the Lanham Act and the Trademark Counterfeiting Act of 1984, 18 U.S.C. § 2320 (Counts 5-6); state law unfair competition claims under the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.201, *et seq.* (Count 7); and copyright infringement claims under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.* (the "Copyright Act") (Counts 8-9).   *Id.*

The Court granted Plaintiff's request to serve Defendant by alternative means pursuant to Fla. Stat. § 48.161 (Doc. Nos. 15-16), which Plaintiff effected on or about March 11, 2025.   Doc. No. 19.   Defendant did not respond to the complaint or otherwise appear in this case, and on Plaintiff's motion, Clerk's default was entered against Defendant on April 18, 2025.   *See* Doc. Nos. 20-22.

Plaintiff filed its first motion for default judgment on May 23, 2025, which the undersigned denied without prejudice on December 8, 2025.   Doc. Nos. 24, 26.   In that Order, the undersigned explained in detail that Plaintiff's motion failed to properly address injunctive relief, failed to clearly identify the scope of the requested injunction, failed to establish the reasonableness of the $53,893.35 in requested fees and $1,594.30 in requested costs, and in particular did not support the requested attorney hourly rates nor provide any billing records or invoices to support the attorney hours and costs.   Doc. No. 26.   The undersigned granted Plaintiff leave to file a renewed motion, and suspended application of Local Rule 7.01(a)'s bifurcated process for seeking fees and costs.   *Id.*

Plaintiff thereafter timely-filed the present motion on January 7, 2026. Doc. No. 27. Plaintiff seeks default judgment with respect to its claims for trademark infringement, trade dress infringement, and copyright infringement (Counts 1-3 and 8-9),[1] entry of a permanent injunction, $100,000.00 in statutory damages, $81,462.50 in attorneys' fees, and $1,270.73 in costs. *Id.* As of the writing of this Report, Defendant has not responded to the present motion, and the time for doing so has expired. *See* Local Rule 3.01(d).[2]

## II.    ALLEGATIONS OF THE COMPLAINT.

Plaintiff is a global entertainment company that creates and distributes live-action visual content for children, including a successful educational children's television show, the "Blippi Show." Doc. No. 1 ¶ 9. The Blippi Show, which features the titular character "Blippi" and his sidekick "Meekah," reaches a global audience of millions of people via various streaming services, social media, and live shows. *Id.* ¶¶ 9, 10.

---

[1] Plaintiff states that it is not seeking default judgment as to any other claims, therefore the undersigned will recommend that the Court consider all other claims abandoned and dismiss without prejudice Plaintiff's complaint as to Counts 4-7. *See* Doc. No. 27, at 9 n.1. *See also Salt Life, LLC v. Easy $Ailing, LLC*, No. 6:19-cv-1668-Orl-40LRH, 2020 WL 4741523, at *2 n.3 (M.D. Fla. July 28, 2020), *report and recommendation adopted*, No. 6:19-cv-1668-Orl-40LRH, 2020 WL 10574617 (M.D. Fla. Aug. 17, 2020) (recommending same).

[2] Because Defendant is in default, service of the motion for default judgment was not required. *See* Fed. R. Civ. P. 5(a)(2). Nonetheless, the motion for default judgment includes a certificate of service, stating that Plaintiff served the motion on Defendant, including by email and FedEx. *See* Doc. No. 27, at 32.

- 3 -

Defendant offers character rental services for various characters and various occasions, including birthday parties and corporate events. *Id.* ¶¶ 26-27, 30; Doc. No. 1-3. On its website, Defendant offers Blippi and Meekah impersonators, whose live performances have featured songs from the Blippi Show, and advertises those impersonators with detailed descriptions of the Blippi Show. Doc. No. 1 ¶¶ 29-36; Doc. No. 1-3.

In sum, Plaintiff alleges that Defendant knowingly, willfully, and intentionally offers counterfeit and infringing character rental services for Blippi and Meekah, attempting to capitalize on the Blippi Show's fame and recognition. *See, e.g.,* Doc. No. 1 ¶¶ 29, 36, 54, 62, 68, 76, 82, 90, 131-132, 136, 146, 148, 151. Plaintiff alleges that Defendant infringed several registered Blippi- and Meekah-related trademarks (the "BLIPPI Marks" and the "MEEKAH Marks") and registered copyrights (the "Moonbug Copyrights") owned by Plaintiff.[3] *Id.* ¶¶ 11, 24, 26-36, 40-43; *see also* Doc. Nos. 1-1, 1-2. Defendant is also alleged to have infringed the trade dress of Meekah and Blippi, which consists of uniforms of brightly colored attire and accessories (including a bow tie, glasses, suspenders, headwear, and a

---

[3] The BLIPPI Marks include marks bearing the following Registration Numbers: (1) 5,249,736, (2) 5,345,563; (3) 5,335,204, (4) 5,335,209, (5) 5,333,930, (6) 6,889,959, (7) 7,430,058, (8) 7,484,277. Doc. No. 1 ¶ 11; *see also* Doc. No. 1-1. The BLIPPI Marks also include a mark for which it appears an application has been filed, but no registration number issued, identifiable by the following Serial Number: 97/429,181. Doc. No. 1 ¶ 11. The Moonbug Copyrights include those bearing the following Registration Numbers: (1) PA 2-481-676, and (2) PA 2-481-675. *Id.* ¶ 24; *see also* Doc. No. 1-2.

circle waist bag).   *Id.* ¶¶ 19-22.   Despite Plaintiff's attempts to amicably resolve this dispute, to include sending Defendant three cease-and-desist letters across a period of several months, Defendant continued his infringing behavior.   *Id.* ¶¶ 44-47.   The complaint attaches three exhibits: the trademark registrations (Doc. No. 1-1); the copyright registrations (Doc. No. 1-2); and printouts of Defendant's webpage (Doc. No. 1-3).   As relief, Plaintiff seeks permanent injunction, an award of statutory and actual damages, and attorneys' costs and fees.   *Id.* at 29-31.

## III.   STANDARD OF REVIEW.

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment.   First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default.   Fed. R. Civ. P. 55(a).   Second, after obtaining clerk's default, the plaintiff must move for default judgment.   Fed. R. Civ. P. 55(b).   Before entering default judgment, the Court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted.   *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th

Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").[4]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This analysis applies equally to motions for default judgment. *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, at *5 (M.D. Fla. Nov. 24, 2009) (citations omitted). In addition, a party seeking default judgment against an individual must comply with the requirements of the Servicemembers Civil Relief Act, 50 U.S.C. § 3931.[5]

If the plaintiff is entitled to default judgment, then the court must consider whether the plaintiff is also entitled to the relief requested. If the plaintiff seeks

---

[4] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[5] According to Plaintiff's motion and supporting materials, Defendant is not a minor nor is he incompetent, and is not and has never been in active military service. *See* Doc. No. 27, at 18; Doc. No. 27-2, at 2, 15-23. *See also* Fed. R. Civ. P. 55(b); 50 U.S.C. § 3931.

damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought in the motion for default judgment. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008). Unlike well-pleaded allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages to be awarded. *Id.* (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)). Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages). Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages. *See Adolph Coors Co.*, 777 F.2d at 1543-44. However, "a hearing is not necessary if sufficient evidence is submitted to support the request for damages." *Wallace*, 247 F.R.D. at 681.

## IV.   ANALYSIS.

### A.   Jurisdiction.

The Court has subject matter jurisdiction over this action as Plaintiff has brought claims under federal law relating to trademarks and copyright, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and there is supplemental jurisdiction over Plaintiff's state-law claims, 28 U.S.C. § 1367.   The Court also has personal jurisdiction and venue over Defendant, who is a Florida resident served pursuant to Florida Statute § 48.161 (Doc. Nos. 15-19), and the facts giving rise to Plaintiff's claims arose directly from Defendant's business in Florida.   Doc. No. 1 ¶¶ 4, 7.   *See also* Fed. R. Civ. P. 4(k)(1); Fla. Stat. § 48.193.

### B.   Entry of Default.

The undersigned granted Plaintiff's request to serve Defendant via alternative service on the Florida Secretary of State in accordance with Florida Statute § 48.161(1) and Fed. R. Civ. P. 4(e)(1).   Doc. Nos. 15-16.   Plaintiff effected service by sending a copy of the summons and complaint to the Florida Secretary of State on March 11, 2025, and filed an affidavit of compliance reflecting same on March 12, 2025.   Doc. No. 19.   Despite proper service, Defendant has not responded to the Complaint and the time to do so has passed.   The Clerk therefore properly entered default against Defendant.   Doc. Nos. 21, 22.

**C.    Liability**.

1.    Trademark Infringement (Count 1).

Under the Lanham Act, a defendant is liable for trademark infringement, if, "without the consent of the registrant" he or she:

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]

15 U.S.C. § 1114(1)(a).    Therefore, to prevail on a claim for trademark infringement, the plaintiff must establish that: (1) it possesses a valid mark; (2) the defendant used the mark or a colorable imitation of the mark; (3) the defendant's use of the mark occurred "in commerce"; (4) the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services"; and (5) the defendant used the mark in a manner likely to confuse consumers.   *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008) (citations and internal quotation marks omitted).

Plaintiff alleges all five elements in its complaint, which Defendant admits by his default.  Specifically, Plaintiff alleges that it exclusively owns and possesses U.S. trademark registrations and applications for the BLIPPI and MEEKAH Marks, which have been used continuously since 2014, and Plaintiff has attached the trademark registration certificates.   Doc. No. 1 ¶¶ 11, 13; Doc. No. 1-1.   Defendant

used the marks in commerce, including through inclusion on his website to offer Blippi and Meekah character rental services.  Doc. No. 1 ¶¶ 27-28.  Plaintiff further alleges that the BLIPPI and MEEKAH marks are strong and that the infringing designations used by Defendant were identical to the BLIPPI Marks (which is also supported by portions of Defendant's website attached to the complaint).  *Id.* ¶¶ 15-18, 54, 56, 37; *see also* Doc. No. 1-3.  The infringing designations were used in connection with goods and services offered by Plaintiff, as both parties offer entertainment services (including live performances) for the same target audience (children) and reach their customers through the internet. Doc. No. 1 ¶¶ 9-10, 26, 31-33, 38-39, 54, 56; *see also* Doc. No. 1-3.  And Plaintiff alleges that Defendant intentionally and willfully infringed the BLIPPI and MEEKAH Marks, creating actual confusion as to the differences between Defendant's characters and Plaintiff's characters.   Doc. No. 1 ¶¶ 37-39, 54, 62.

In light of the foregoing, the undersigned finds that Plaintiff has sufficiently pled a claim of trademark infringement against Defendant, and will respectfully recommend that the Court enter default judgment on this claim.  *See, e.g., Warner Bros. Ent. Inc. v. Phillips*, No. 6:14-cv-1294-Orl-37, 2015 WL 4590519, at *6 (M.D. Fla. July 28, 2015) (granting default judgment on trademark infringement claim, where complaint and attachments demonstrated that plaintiff owned marks, defendants "used the marks, without authorization, in connection with sale, advertising,

marketing, and offering for sale of reproduced infringing merchandise through various websites, online stores, and social networking pages, and that said use likely caused customer confusion."); *Disney Enters., Inc. v. Kool Klown Party People, Inc.*, No. 5:08-cv-326-Oc-10GRJ, 2010 WL 11507093, at *1 (M.D. Fla. Mar. 2, 2010) (granting default judgment on trademark infringement claim where complaint alleged that defendants "without [plaintiff's] authorization—sold, distributed, advertised, and used adult costumes which were either reproductions of [plaintiff's] characters or were substantially similar to the . . . trademarked elements of the works.").

### 2.    Trademark Dress Infringement (Counts 2 and 3).

To prevail on a claim for trade dress infringement under the Lanham Act, a plaintiff must prove that "(1) its trade dress is inherently distinctive or has acquired secondary meaning, (2) its trade dress is primarily non-functional, and (3) the defendant's trade dress is confusingly similar." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1535 (11th Cir. 1986)); *see also Bentley Motors Corp. v. McEntegart*, 976 F. Supp. 2d 1297, 1320 (M.D. Fla. 2013). The undisputed allegations of the complaint state that Defendant's character impersonators' dress has been confused with that of Plaintiff's Blippi characters; that the features of the BLIPPI and MEEKAH trade dress are nonfunctional (as shown by photos of Defendant's Blippi and Meekah character impersonators, included within and attached to the complaint); and that

the product is inherently distinctive and has acquired secondary meaning, with the characters attaining global fame.   Doc. No. 1 ¶¶ 10, 14, 19-22, 26-39, 63-90; *see also* Doc. No. 1-3, at 22-38.   Again, Defendant admits these allegations by virtue of his default.

The undersigned finds that these allegations are sufficient to state claims for trade dress infringement with respect to both Counts 2 and 3 of the complaint, and will also recommend that the Court enter default judgment on these claims.   *See, e.g., Maurer Rides USA, Inc. v. Beijing Shibaolia Amusement Equip. Co ., Ltd.*, No. 6:10-cv-1718-Orl-37KRS, 2012 WL 2469981, at *4 (M.D. Fla. May 30, 2012), *report and recommendation adopted in part sub nom. Maurer Rides USA, Inc. v. Beijing Shibaolia Amusement Equip. Co.*, No. 6:10-cv-1718-Orl-37KRS, 2012 WL 2463834, at *4 (M.D. Fla. June 27, 2012) ("By failing to answer the complaint, [defendants] admit that [plaintiff's] rides involve innovative and unique design concepts and strict adherence to high safety standards that have been internationally recognized among manufacturers in the amusement ride industry.  The photographs of the rides attached as exhibits to the amended complaint reflect that the trade dress is primarily non-functional, and that the rides manufactured and promoted by [defendants] are confusingly similar to [plaintiff's] rides.   Therefore, [defendants] are liable for violation of § 11225(a) of the Lanham Act."); *Bentley Motors Ltd. Corp.*, 976 F. Supp. 2d at 1320 (plaintiff stated claim for trade dress infringement, as

- 12 -

admitted by defendants by default, by alleging that "knockoff Bentley vehicles [were] confused with Bentley's original product design, that Bentley's trade dress includes the non-functional appearance and shape of the Bentley GTC, and that Bentley's product design is inherently distinctive and has acquired secondary meaning.").

### 3. Copyright Infringement (Counts 8-9).

To establish a claim of copyright infringement under 17 U.S.C. § 501, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *see also Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996); *McGlynn v. El Sol Media Network Inc.*, No. 6:23-cv-531-PGB-LHP, 2024 WL 4201917, at *5 (M.D. Fla. July 12, 2024), *report and recommendation adopted*, No. 6:23-cv-531-PGB-LHP, 2024 WL 4201964 (M.D. Fla. Aug. 7, 2024).

To satisfy the ownership element, "a plaintiff must prove that the work . . . is original and that the plaintiff complied with applicable statutory formalities." *Bateman*, 79 F.3d at 1541 (alterations in original) (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995)). "[A] certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *Id.* (quoting 17 U.S.C. § 410(c)). Once the plaintiff produces a

certificate of registration, "the burden shifts to the defendant to demonstrate why the claim of copyright is invalid." *Id.* To satisfy the copying element, a plaintiff must demonstrate that, "as a factual matter, that the alleged infringer actually copied plaintiff's copyrighted material," and that "the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010) (citations and internal quotation marks omitted).

Here, Plaintiff has alleged that it owns all rights and title to the copyrights for the Blippi Show, and has attached copies of the copyright registrations showing a July 19, 2024 effective registration date. Doc. No. 1 ¶¶ 23-25; *see also* Doc. No. 1-2. Moreover, Plaintiff maintains that Defendant has intentionally, willfully, and knowingly violated Plaintiff's exclusive right to reproduce the copyrighted works by copying, reproducing, and distributing derivative works protected by the copyrights on Defendant's website and by offering infringing Blippi Show character impersonators, without authority, authorization, or license, and that Defendant continues to do so despite Plaintiff's efforts to resolve this matter without litigation. Doc. No. 1 ¶¶ 26-36, 44-47, 124-134, 139-149; *see also* Doc. No. 1-3.

The undersigned finds that these allegations, which by virtue of Defendant's default are undisputed, are sufficient to support claims for copyright infringement. *See, e.g., Disney Enters., Inc. v. Law*, No. 6:07-cv-1153-Orl-18GJK, 2008 WL 203393, at

\*3 (M.D. Fla. Jan. 23, 2008) (granting default judgment on copyright infringement claim where plaintiff alleged that defendant infringed copyrights in world famous characters owned by plaintiff by creating unauthorized computer-generated photos bearing the characters, and defendant continued infringing activity despite Plaintiff's efforts to amicably resolve the issues prior to filing lawsuit); *Thompsons Film, LLC v. Velez*, No. 6:13-cv-671-Orl-36TBS, 2014 WL 3721288, at \*4 (M.D. Fla. July 28, 2014) (finding complaint sufficiently alleged copyright infringement against defaulting defendant when plaintiff alleged ownership of copyright, attached copyright registrations to complaint, and submitted proof that Defendant copied the copyrighted material).

**D.    Relief**.

By the present motion, Plaintiff seeks a permanent injunction, an award of statutory damages, and attorneys' fees and costs.    Doc. No. 27, at 19-30; *see also* Doc. No. 1, at 29-31.    Each request will be addressed in turn.

1.    Permanent Injunction.

Plaintiff seeks injunctive relief under both the Lanham Act and the Copyright Act.   Doc. No. 27, at 19.    Both acts permit such relief to prevent or restrain future infringement.    15 U.S.C. § 1116(a); 17 U.S.C. § 502.    Here, Plaintiff requests an order permanently enjoining Defendant, and any officers, agents, servants, employees, and all persons in active concert or participation with Defendant, from:

(a)     Using Plaintiff's BLIPPI Marks, or any other mark that includes any part of the BLIPPI Marks, or any other mark likely to cause confusion with the BLIPPI Marks, in connection with the promotion, advertising, offering for sale, or sale, of any goods or services;

(b)     Using the BLIPPI Trade Dress, MEEKAH Trade Dress, or any other mark that includes any part of the BLIPPI Trade Dress, MEEKAH Trade Dress, or any other mark likely to cause confusion with the BLIPPI Trade Dress or MEEKAH Trade Dress, in connection with the promotion, advertising, offering for sale, or sale, of any goods or services;

(c)     Representing, suggesting in any fashion to any third party, or performing any act that may give rise to the belief that Defendant, or any of his goods or services, are related to, authorized by, or sponsored by Plaintiff;

(d)     Using any of Plaintiff's copyrighted works, including the content of the Moonbug Copyrights and all images, with Blippi, Meekah, or any other content from the Blippi Show or that use the BLIPPI Marks;

(e) Using any name, image, and likeness of Blippi, Meekah, and any other character from the Blippi Show for any reason, including, but not limited to, as an offered service for an impersonator; and

(f) Assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to above.

Doc. No. 27, at 22.   Plaintiff also seeks an order directing Defendant to remove any remaining infringing content from any websites, social media platforms, or other media under his control within fourteen (14) days of entry of judgment, and to file, within thirty (30) days of entry of the injunction, the report required by 15 U.S.C. § 1116(a) describing in detail the manner and form in which Defendant has complied.   *Id.* at 23.

A plaintiff seeking a permanent injunction must demonstrate that: "(1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).   *See also Dassault Systemes Solidworks Corp. v. Linear Eng'g & Mfg. Corp.*, No. 8:23-cv-1444-KKM-AEP, 2024 WL 2874842, at *7 (M.D. Fla. May 21, 2024), *report and recommendation adopted*, No. 8:23-cv-01444-KKM-AEP, 2024 WL 3289519 (M.D. Fla. July 3, 2024).

As discussed, Plaintiff created and owns the registered BLIPPI Marks and MEEKAH Marks and related registered copyrights, and Plaintiff is entitled to control distribution of its creative work.   And by virtue of Defendant's default, Plaintiff has established that it has suffered irreparable harm, and that monetary damages are inadequate to compensate for that harm.   *See Dassault Systemes Solidworks Corp.*, 2024 WL 2874842, at *8 ("[B]y nature of the Defendants' defaults, Plaintiff has established the first two elements" for obtaining an injunction); *see also Roor Int'l BV v. DNR USA Corp.*, No. 6:19-cv-171-Orl-31LRH, 2020 WL 1557721, at *4 (M.D. Fla. Mar. 17, 2020), *report and recommendation adopted*, No. 6:19-cv-171-Orl-31LRH, 2020 WL 1550782 (M.D. Fla. Apr. 1, 2020) ("Trademark infringement

encroaches on 'the right of the public to be free of confusion' as well as 'the synonymous right of the trademark owner to control his products' reputation.'") quoting *BellSouth Advertising & Publishing Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991))); *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *7 (S.D. Fla. Oct. 18, 2007) ("It is usually recognized in trademark infringement cases that there is no adequate remedy at law to redress infringement and infringement by its nature causes irreparable harm." (citing *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995) & *Gen. Motors Corp. v. Pat Cat Carts. Inc.*, 2006 WL 2982869 (M.D. Fla. 2006))).

As to the third element, the undersigned finds that the threatened injury to Plaintiff, specifically the costs and hardship of continuing to protect its copyrighted works and trademarks, outweighs any damage the injunction may cause to Defendant. *See* Doc. No. 1 ¶¶ 42, 59-60, 73-74, 87-88, 134, 137, 149, 152; *see also* Doc. No. 27, at 21. *See also Dassault Systemes Solidworks Corp.*, 2024 WL 2874842, at *8; *Roor Int'l BV*, 2020 WL 1557721, at *4. Specifically, the only harm to Defendant would be the loss in revenue from no longer engaging in the infringing conduct. *See Dassault Systemes Solidworks Corp.*, 2024 WL 2874842, at *8; *see also RedBox+ Int'l, LLC v. Waste Mgmt. Sols., Inc.*, No. 8:23-cv-393-CEH-SPF, 2023 WL 8438571, at *8 (M.D. Fla. Oct. 5, 2023), *report and recommendation adopted*, No. 8:23-cv-393-CEH-SPF, 2023 WL 8438920 (M.D. Fla. Dec. 5, 2023) (finding that balance of hardship favored

plaintiff because potential loss of revenue gained by infringing conduct was outweighed by threatened ongoing injury to Plaintiff).  Finally, the undersigned finds that a permanent injunction would not be adverse to the public interest because it promotes the purpose of the Lanham Act and the Copyright Act.  *See, e.g., Dassault Systemes Solidworks Corp.*, 2024 WL 2874842, at *8 (finding same); *Safety Nailer LLC v. Individuals, Partnerships, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-cv-22703, 2021 WL 6197744, at *5 (S.D. Fla. Dec. 30, 2021) (public interest supports issuance of permanent injunction to prevent consumers from being misled by defendant's counterfeit products).

Accordingly, the undersigned will recommend that the Court enter a permanent injunction against Defendant as set forth in this Report and Recommendation, including ordering Defendant to remove all infringing materials from his website and social media by date certain, and to file and serve on Plaintiff the report required by 15 U.S.C. § 1116(a).  *See RedBox+ Int'l, LLC*, 2023 WL 8438571, at *8 (finding plaintiff entitled to permanent injunction when defendant admitted all elements, by default); *see also Moonbug Ent. Ltd. v. A20688*, No. 21 CIV. 4313 (VM), 2022 WL 1239586, at *2 (S.D.N.Y. Apr. 26, 2022) (granting permanent injunction against defaulting defendants regarding use of Blippi marks, where complaint alleged all factors of permanent injunction).

2.    <u>Statutory Damages</u>.

Plaintiff next seeks statutory damages pursuant to the Lanham Act and the Copyright Act.    Under both Acts, a prevailing party may elect either actual damages and the infringer's profits, or statutory damages.    17 U.S.C. § 504(a); 15 U.S.C. § 1117(c); *see also Jordan v. Time, Inc.*, 111 F.3d 102, 104 (11th Cir. 1997).    Here, Plaintiff elects statutory damages.    Doc. No. 27, at 23-26; *see also* Doc. No. 1, at 31.

Section 504(c) states:

> Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1).    Further, "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."    *Id.* § 504(c)(2); *see also Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1271 (11th Cir. 2015).

Section 1117(c) states:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of

> statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of [. . . ] not less than \$1,000 or more than \$200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just[.]

15 U.S.C. § 1117(c).   Further, if the Court finds that the use of the counterfeit mark is willful, a plaintiff may seek up to \$2,000,000.00 per counterfeit mark.   *Id.*   The Eleventh Circuit has interpreted willfulness under the Copyright Act to "mean[ ] that the defendant 'knows his actions constitute an infringement; the actions need not have been malicious.'"   *Yellow Pages Photos, Inc.*, 795 F.3d at 1271 (quoting *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 851 (11th Cir. 1990))).   Willfulness also encompasses "reckless disregard of the possibility that one's actions are infringing a copyright."   *Id.* at 1272.   Similarly, trademark infringement is "willful" when "the infringer acted with actual knowledge or reckless disregard," and willfulness can be inferred "based on a defendant's use of a confusingly similar mark and a defendant's default."   *Sream, Inc. v. Asat Inc.*, No. 18-14258-CIV, 2019 WL 1573337, at \*4 (S.D. Fla. Apr. 11, 2019) (quoting *Petmed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004)).

Because the Lanham Act "does not provide guidelines for courts to use in determining an appropriate award[,] . . . courts have looked to the Copyright Act's statutory damages provision as guidance."   *Ghost Controls, LLC, v. Gate1Access LLC.*, No. 5:20-cv-288-Oc-37PRL, 2020 WL 8309717, at \*5 (M.D. Fla. Oct. 16, 2020),

*report and recommendation adopted*, No. 5:20-cv-288-Orl-37PRL, 2021 WL 50334 (M.D. Fla. Jan. 6, 2021) (internal citations and quotation marks omitted).   The Court has wide discretion to set the amount of damages, so long as it is within statutory limits. *Cable/Home Commc'n Corp. v. Network Prods. Inc.*, 902 F.2d 829, 852 (11th Cir. 1990); *Sream, Inc.*, 2019 WL 1573337, at \*4.   Courts have considered the following nonexclusive factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Bait Prods. Pty Ltd. v. Murray*, No. 8:13-cv-169-T-33AEP, 2013 WL 4506408, at \*5 (M.D. Fla. Aug. 23, 2013) (quoting *Rolex Watch U.S.A., Inc. v. Lynch*, No. 2:12-cv-542-FtM-38UAM, 2013 WL 2897939, at \*5 (M.D. Fla. June 12, 2013)).

"When a plaintiff in a copyright suit elects statutory damages, the damages are calculated based on the number of copyrighted works and the number of infringers, not the number of incidents of infringement."   *McDermott v. El Sol Media Network, Inc.*, No. 6:22-cv-999-PGB-DAB, 2023 WL 2931277, at \*3 (M.D. Fla. Feb. 8, 2023), *report and recommendation adopted*, No. 6:22-cv-999-PGB-DAB, 2023 WL 2931202 (M.D. Fla. Feb. 23, 2023) (citations omitted).   "Statutory damages are not intended to provide a plaintiff with a windfall recovery; they should bear some

relationship to the actual damages suffered." *Id.* at *4 (citation and internal quotation marks omitted).

Plaintiff seeks statutory damages in the amount of $25,000.00 for infringement of two (2) of its registered BLIPPI and MEEKAH Marks and for infringement of both of its Moonbug Copyrights, for a total of $100,000.00. Doc. No. 27, at 26.[6] Here, the complaint alleges that Defendant used identical marks, which constitutes "strong evidence that Defendant was purposefully attempting to confuse the marketplace and trade . . . on [Plaintiff's] reputation[.]" *See Lynch*, 2013 WL 2897939, at *6. *See, e.g.,* Doc. No. 1 ¶¶ 50, 58, 71, 85, 105, 127, 131-132, 142, 146-147. The complaint further alleges that Plaintiff sent Defendant several cease-and-desist letters across several months in an attempt to resolve this dispute amicably, yet Defendant would not agree to cease his infringing actions and has not participated in this action – which is also strong evidence of Defendant's willful infringement. Doc. No. 1 ¶¶ 44-47; *see also* Doc. No. 27, at 25. *See also Lynch*, 2013 WL 2897939, at *6 (finding defendant willfully infringed upon registered trademarks where defendant used identical marks, had knowledge that he was

---

[6] Although Plaintiff identifies nine (9) registered marks in its complaint, Plaintiff is apparently only seeking statutory damages for infringement of two (2) of them. *See* Doc. No 1 ¶ 11; Doc. No. 27, at 27. Plaintiff does not explain this discrepancy, but since the amount Plaintiff requests is below the statutory limits, and because Plaintiff has established Defendant's willful infringement of all of its registered marks, the undersigned does not find this discrepancy to be dispositive.

selling counterfeit watches in violation of those trademarks, and refused to participate in the trademark infringement action).

Thus, upon review, the undersigned will recommend that the Court award the $100,000.00 in statutory damages as requested, to compensate Plaintiff for the damages suffered and deter future violations of the law. *See, e.g.*, *Lynch*, 2013 WL 2897939, at *6 (awarding $100,000.00 per trademark willfully infringed); *Rolex Watch U.S.A., Inc. v. Lizaso-Rodriguez*, No. 1:11-cv-23986-PAS, 2012 WL 1189768, at *4 (S.D. Fla. Apr. 9, 2012) (awarding $50,000.00 per trademark where conduct was intentional and willful); *Microsoft Corp. v. Silver Star Micro, Inc.*, No. 1:06–cv–1350, 2008 WL 115006, at *9 (N.D. Ga. Jan. 9, 2008) (awarding $25,000.00 per infringed trademark and $30,000.00 per infringed copyright where conduct was flagrant and purposeful).

3.    <u>Attorneys' Fees and Costs</u>.

i.    *Entitlement to Attorneys' Fees and Costs.*

Plaintiff next seeks an award of attorneys' fees and costs under both the Lanham Act and the Copyright Act. *See* Doc. No. 27, at 26-30; Doc. No. 1, at 31. Plaintiff may be awarded attorney's fees and costs as the prevailing party under the Copyright Act. *See* 17 U.S.C. § 505 ("[T]he court in its discretion may allow the recovery of full costs by or against any party . . . the court may also award reasonable attorney's fee to pay the prevailing party as part of the costs."). And

"fees and costs are commonly awarded by courts in copyright infringement default cases."  *McGlynn*, 2024 WL 4201917, at *8 (collecting authority).   Accordingly, and in the absence of any argument to the contrary, the undersigned will recommend that the Court find Plaintiff entitled to fees in this case under the Copyright Act.

Under the Lanham Act, however, fees may only be awarded to a prevailing party "in exceptional cases."   15 U.S.C. § 1117(a).   "[T]o be an 'exceptional case' under the Lanham Act requires only that a case 'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated."  *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).   Under the *Octane Fitness* standard, "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances" under a preponderance of the evidence standard.  *DuraServ LLC v. Action Garage Door Repair Corp.*, No. 2:24-cv-996-JLB-KCD, 2025 WL 1195724, at *5 (M.D. Fla. Feb. 12, 2025), *report and recommendation adopted*, No. 2:24-cv-996-JLB-KCD, 2025 WL 1194205 (M.D. Fla. Apr. 24, 2025) (citation omitted).   Courts consider a non-exhaustive list of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of

compensation and deterrence." *Id.* (citations and internal quotation marks omitted).

"The entry of default judgment, however, 'does not automatically translate into a finding that a case is exceptional.'" *Crossfit, LLC v. Earl McGuire, IV*, No. 6:25-cv-129-JSS-NWH, 2026 WL 964964, at *5 (M.D. Fla. Jan. 13, 2026), *report and recommendation adopted*, No. 6:25-cv-129-JSS-NWH, 2026 WL 964972 (M.D. Fla. Feb. 9, 2026) (citing *CarMax Auto Superstores, Inc. v. StarMax Fin., Inc.*, 192 F. Supp. 3d 1279, 1284 (M.D. Fla. 2016)).   In its renewed motion, Plaintiff makes no argument that the present case warrants an "exceptional" designation, and other than citing to 15 U.S.C. § 1117(a), wholly fails to discuss any entitlement to fees under the Lanham Act.   Doc. No. 27, at 26-27.   The undersigned previously advised Plaintiff that the undersigned would recommend denial of any requested form of relief – including fees and costs – that was not properly supported by legal argument and evidence in a renewed motion.   Doc. No. 26, at 9-10.   Given Plaintiff's failure to address its request for fees under the Lanham Act, the undersigned will recommend that fees not be awarded under the Lanham Act.   *See PJI Rest. LLC v. Papa Joes of Islamorada, LLC*, No. 25-cv-10006, 2025 WL 2086506, at *17-18 (S.D. Fla. July 25, 2025), *report and recommendation adopted*, No. 4:25-cv-10006-KMM, 2025 WL 2732652 (S.D. Fla. Aug. 21, 2025) (declining to award fees under Lanham Act where plaintiff did not establish case was "exceptional," even though defendant neither appeared nor

litigated the case resulting in default judgment); *PRN Health Servs. LLC v. Nurses PRN of Fla., LLC*, No. 8:21-cv-2471-TPB-SPF, 2022 WL 4072064, at *10 (M.D. Fla. Aug. 16, 2022), *report and recommendation adopted*, No. 8:21-cv-2471-TPB-SPF, 2022 WL 4017099 (M.D. Fla. Sept. 2, 2022) (granting default judgment on Lanham Act claims, but not awarding fees where case involved allegations of deliberate trademark infringement, but plaintiff provided nothing else to compel a finding that the case was "exceptional").

ii.    *Quantification of Attorneys' Fees.*

Courts apply the federal lodestar approach to calculating the amount of a fee award under § 505, which is calculated by multiplying the reasonable hourly rate by the number of hours reasonably expended.   *See Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1336 (11th Cir. 2001); *CarMax Auto Superstores, Inc.*, 192 F. Supp. 3d at 1284; *Bork v. Tran Huong Quynh*, No. 2:19-cv-354-FtM-38MRM, 2020 WL 6366189, at *1 (M.D. Fla. Oct. 14, 2020), *report and recommendation adopted*, 2020 WL 6363847 (M.D. Fla. Oct. 29, 2020).   The party moving for fees has the burden of establishing that the hourly rate and hours expended are reasonable.   *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

"To determine the reasonableness of the fees requested, the court must first determine the number of hours reasonably expended on the litigation.   The attorney fee applicant should present records detailing the amount of work

performed." *See Ghost Controls, LLC*, 2020 WL 8309717 at *8. And a reasonable hourly rate for an attorney is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299 (citations omitted). *See also Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). "[T]he 'relevant market' . . . is 'the place where the case is filed.'" *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)). Here, the prevailing market rate is determined by the market rate in the Middle District of Florida and, specifically, the Orlando Division. *See Country Inns & Suites by Carlson, Inc. v. Interstate Props., LLC*, No. 6:07-cv-104-Orl-28DAB, 2009 WL 189946, at *4 (M.D. Fla. Jan. 23, 2009) (while requested hourly rates "may be commanded as of course in counsel's home state, reasonable rates are judged in accordance with the legal market (Orlando) and the services provided.").

To establish that the requested hourly rate is consistent with the prevailing market rate, the fee applicant must produce "satisfactory evidence" that "speak[s] to rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299. This requires "more than the affidavit of the attorney performing the work," and generally includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates. *Id.*

Plaintiff requests $81,462.50 in attorneys' fees for 123.9 hours of attorney work and 14.5 hours of paralegal work as follows:

| Attorney | Role | Hourly Rate | Hours |
| --- | --- | --- | --- |
| Adam Wolek | Partner | $790-$870 | 38.1 |
| Clarissa Sullivan | Associate | $525-$600 | 64.7 |
| Meeghan Tirtasaputra | Associate | $555 | 21.1 |
| Ashley Bourget | Paralegal | $300 | 14.5 |

Doc. No. 27, at 27-30; Doc. No. 27-1, at 3-5.

To support these hourly rates, Plaintiff points to its motion, and to the declaration of its own counsel, Adam Wolek, who provides information about each attorney's and paralegal's experience, and declares that the rates sought are reasonable within the Middle District of Florida.   Doc. No. 27, at 27-30; Doc. No. 27-1.   Plaintiff also attaches the firm biographies for each attorney, and cites to decisional authority supporting somewhat similar rates in Miami, Tampa, and Chicago, but notably none support the high rates sought here.   Doc. No. 27, at 28; Doc. No. 27-1, at 50-61.

As previously noted, an attorney's own self-serving declaration, along with cases from outside the Orlando area, are not sufficient to establish that the rates requested are reasonable.   And other than explaining each attorney's experience, Plaintiff provides nothing more, such as evidence that there were no attorneys

within the Orlando legal market that could have competently litigated this case, or that this case was particularly complex or unique. Accordingly, the Court relies on its own knowledge and expertise in determining whether the hourly rates sought are reasonable. *See Norman*, 836 F.2d at 1303.

With respect to Attorney Wolek, a partner with over 17 years' experience, the undersigned finds that a reasonable and customary rate of $450.00 is appropriate. And with respect to Attorney Sullivan, an associate with six years' experience, the undersigned finds an hourly rate of $350.00 reasonable and customary. *See, e.g., Glob. Glass Techs., Inc.*, No. 8:20-cv-2517-MSS-AEP, 2024 WL 4604163, at *4-6 (M.D. Fla. Aug. 15, 2024), *report and recommendation adopted in part, rejected in part on other grounds sub nom. Glob. Glass Techs., Inc. v. Rsch. Frontiers, Inc.*, No. 8:20-cv-02517-MSS-AEP, 2025 WL 2088421 (M.D. Fla. July 25, 2025), *reh'g denied*, No. 8:20-cv-2517-MSS-AEP, 2025 WL 2902944 (M.D. Fla. Sept. 23, 2025) (finding hourly rates ranging from $375.00 to $550.00 reasonable for shareholder level attorneys in patent infringement action); *McGlynn*, 2024 WL 4201917, at *8 (finding $350.00 hourly rate reasonable for attorney with six years of IP litigation experience); *McDermott*, 2023 WL 2931277, at *6 (awarding hourly rates of $450.00 for attorney with 29 years of experience and $350.00 for associate with six years of experience in copyright infringement action).

As for Paralegal Bourget, who has nearly 12 years of experience, the undersigned finds that a reasonable hourly rate is $150.00. *See River Cross Land Co., LLC v. Seminole Cty.*, No. 6:18-cv-1646-ACC-LHP, 2022 WL 20622333, at *5 (M.D. Fla. Dec. 12, 2022), *report and recommendation adopted*, 2023 WL 5748424 (M.D. Fla. Jan. 5, 2023) (finding $150.00/hour rate customary and reasonable rate for paralegals within this District) (citing *Sanchez v. M&F, Inc., LLC*, No. 6:17-cv-1752-Orl-22LRH, 2020 WL 4671144, at *5 (M.D. Fla. Aug. 12, 2020) (awarding $150.00 per hour for a paralegal in Orlando Division)).

Attorney Tirtasaputra, however, has not appeared in this action, and it does not appear that she is a member of the Florida Bar or the Middle District of Florida Bar. The undersigned specifically noted this issue in the December 8, 2025 Order, yet Plaintiff wholly fails to address it in the present motion. Doc. No. 26, at 6; Doc. No. 27, at 26-29. In the absence of any argument or explanation in support, the undersigned will recommend that Attorney Tirtasaputra's hourly rate be reduced to the prevailing paralegal rate of $150.00. *See Callaway v. Acting Comm'r of Soc. Sec.*, 802 F. App'x 533, 537 (11th Cir. 2020) (finding no abuse of discretion to treat the work of non-admitted attorneys as compensable at prevailing market rates for paralegal services)[7]; *Parsons v. Regna*, No. 6:20-cv-123-RBD-LHP, 2023 WL 6849832,

---

[7] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

at *7 (M.D. Fla. Sept. 18, 2023), *report and recommendation adopted*, 2023 WL 6845308 (M.D. Fla. Oct. 17, 2023) (reducing the amount of fees awarded for non-appearing, non-admitted attorneys to $150.00 paralegal rate); *Seven Oaks Millwork, Inc. v. Royal Foam US, LLC*, No. 3:20-cv-28-BJD-MCR, 2021 WL 8201479, at *9 (M.D. Fla. Aug. 10, 2021), *report and recommendation adopted*, 2021 WL 8201487 (M.D. Fla. Sept. 8, 2021) (reducing hourly rate for out-of-state attorney who did not appear *pro hac vice* to $150.00 per hour).

Turning to the hours requested, Plaintiff again references the declaration from Attorney Wolek, and has also submitted redacted billing records.   Doc. No. 27-1.   Upon review of these materials, however, the undersigned finds several issues that call into question the reasonableness of the requested hours and mandate a reduction of same.

To begin, a review of the billing records shows multiple instances of duplicative billing, excessive billing, and billing for clerical tasks performed by attorneys.[8]   *See, e.g.*, Doc. No. 27-1 at 18, 24, 25 (Attorneys Tirtasaputra and Sullivan both billing for finalizing the complaint); at 40 (Attorney Sullivan billing to review upcoming deadlines); at 33 (Paralegal Bourget billing for calculating deadlines); at

---

[8] The undersigned also notes that the chart provided in Attorney Wolek's declaration (Doc. No 27-1, at 5-8) equates to a total of 135.5 hours, whereas the billing records equate to a total of 138.4 hours (Doc. No. 27-1, at 12-48).   The undersigned assumes this is a scrivener's error and utilizes the billing records for all further calculations.

24 (Attorney Sullivan billing for both finalizing complaint and drafting letter to Defendant as well as to prepare exhibits).   Plaintiff provides neither explanation nor legal authority in support of these billing practices, and such hours are neither reasonable nor recoverable.   *See Grayson v. No Labels, Inc.*, No. 6:20-cv-1824-PGB-LHP, 2024 WL 473775, at *16, *22 (M.D. Fla. Jan. 4, 2024), *report and recommendation adopted*, No. 6:20-cv-1824-PGB-LHP, 2024 WL 863117 (M.D. Fla. Feb. 29, 2024), *aff'd*, No. 24-10777, 2025 WL 100788 (11th Cir. Jan. 15, 2025), *cert. denied*, 146 S. Ct. 358 (2025) (reducing attorney and paralegal hours spent performing clerical work, to include calendaring deadlines, filing, and preparing exhibits); *Intenze Prods., Inc. v. Dead Man Supplies Corp.*, No. 8:15-cv-1074-T-36AAS, 2017 WL 759036, at *5 (M.D. Fla. Feb. 9, 2017), *report and recommendation adopted*, No. 8:15-cv-1074-T-36AAS, 2017 WL 749496 (M.D. Fla. Feb. 27, 2017) (reducing block-billed hours); *Health First, Inc. v. Hynes*, No. 6:11-cv-715-Orl-41KRS, 2016 WL 4547186, at *4 (M.D. Fla. Sept. 1, 2016) (reducing hours where plaintiff's counsel billed for multiple reviews of the same documents).

More troublesome, however, is the overall high number of hours sought. This was a relatively straight-forward trademark and copyright infringement action, with only 27 docket entries.   There was no discovery, and the only motions practice was for accomplishing alternative service on Defendant, and obtaining Clerk's default and default judgment.   The undersigned in particular notes that

Plaintiff expended 39.5 hours of attorney time alone on preparing and filing the present renewed motion for default judgment. *Compare* Doc. No. 24 (prior motion for default judgment seeking 98.9 attorney hours) *with* Doc. No. 27 (renewed motion for default judgment seeking 138.4 attorney hours). The undersigned is baffled at the number of hours spent on this motion, particularly when the only differences between the two motions are Plaintiff's specification of the scope of the requested injunction and additional support for the amount of fees and costs requested – both areas that the undersigned previously explained were legally deficient. *Compare* Doc. No. 24, *with* Doc. No. 27. *See Transportation All. Bank Inc. v. Trax Air, LLC*, No. 6:16-cv-1773-Orl-40DCI, 2018 WL 4691245, at *7-8 (M.D. Fla. Sept. 10, 2018), *report and recommendation adopted*, No. 6:16-cv-1773-Orl-40DCI, 2018 WL 4680332 (M.D. Fla. Sept. 28, 2018) (reducing attorneys' fees in default judgment context in part due to the court denying plaintiff's prior motions for default judgment, resulting in "unnecessary litigation caused solely by the manner in which Plaintiff litigated this case."). And while the undersigned recognizes that Plaintiff did engage in pre-suit communications with Defendant as well as settlement negotiations, the undersigned cannot say that 138.4 hours is reasonable.

But perhaps most importantly, as noted above, Plaintiff has failed to establish that it is entitled to any fees under the Lanham Act. Thus, the undersigned cannot recommend an award of any fees under that statute. Plaintiff has asserted nine

claims in this case, five of which are under the Lanham Act (Counts 1-5), and only two of which are under the Copyright Act (Counts 8-9). Doc. No. 1. And while the factual allegations that relate to all claims are largely identical, and Plaintiff has prosecuted both its Lanham Act and Copyright Act claims together, the undersigned cannot recommend what would be a windfall to Plaintiff and credit all attorney and paralegal hours sought, particularly when Plaintiff made no effort in either iteration of its motion for default judgment to demonstrate entitlement to fees under the Lanham Act.

In sum, Plaintiff has presented billing records that show instances of duplicative, excessive, and block billing. Plaintiff has not explained the high number of hours sought in relation to this straightforward litigation, particularly where many of the hours were spent correcting a deficient motion. And Plaintiff has not demonstrated entitlement to fees under the Lanham Act. As such, a reduction in hours is clearly warranted.

A review of the billing records makes a line-by-line reduction near impossible given the grouping together of all claims, therefore the undersigned will recommend an across-the-board reduction. And for the reasons discussed above, the undersigned finds that a 50% reduction is appropriate.[9] *See Bivins v. Wrap It*

---

[9] The undersigned finds this to be somewhat generous, given that Plaintiff is truly only entitled to fees for two of its nine claims.

*Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) ("When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut."); *Hepsen v. J.C. Christensen & Assocs., Inc.*, 394 F. App'x 597, 600 (11th Cir. 2010) (affirming 50% reduction in hours that were excessive, redundant, block billed, and clerical in nature); *Valdez v. Kalmd Home Care LLC*, No. 6:24-cv-237-GAP-RMN, 2025 WL 1727265, at *4 (M.D. Fla. June 4, 2025), *report and recommendation adopted*, No. 6:24-cv-237-GAP-RMN, 2025 WL 1726237 (M.D. Fla. June 20, 2025) (reducing claimed attorney hours by 50% across-the-board where billing records showed excessive hours, time spent on clerical tasks or to correct counsel's professional errors, and hours spent on claims for which movant was not the prevailing party, and where the billing records did not differentiate between the claims); *BJCC, LLC v. LeFevre*, No. 8:09-cv-551-T-17EAJ, 2011 WL 5597305, at *6 (M.D. Fla. Oct. 11, 2011), *report and recommendation adopted*, No. 8:09-cv-551-T-17EAJ, 2011 WL 5597349 (M.D. Fla. Nov. 17, 2011) (where billing records did not permit line-by-line reduction for hours spent on non-compensable claims, across-the-board reduction was appropriate); *Rynd v. Nat'l Mut. Fire Ins. Co.*, No. 8:09-cv-1556-T-27TGW, 2012 WL 939387, at *5 (M.D. Fla. Jan. 25, 2012), *report and recommendation adopted*, No. 8:09-cv-1556-T-27TGW, 2012 WL 939247 (M.D. Fla. Mar. 20, 2012)

("Time spent on 'discrete and unsuccessful claims' should be reduced from a fee award." (quoting *Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996)).[10]

With this reduction and the previously-reduced hourly rates, the undersigned will recommend that fees be awarded to Plaintiff in the total amount of $22,565.00 as follows:

| Attorney | Hourly Rate | Hours[11] | Total |
|---|---|---|---|
| Adam Wolek | $450.00 | 19.05 | $8,572.50 |
| Clarissa Sullivan | $350.00 | 32.35 | $11,322.50 |
| Meeghan Tirtasaputra | $150.00 | 10.55 | $1,582.50 |
| Ashley Bourget | $150.00 | 7.25 | $1,087.50 |

ii. *Costs.*

Plaintiff also seeks $1,270.73 in costs, to include $405.00 in filing fees, $759.93 in process server fees, and $105.80 for copying costs. The costs permitted under

---

[10] By citation to this analogous legal authority, the undersigned is not saying that Plaintiff has not prevailed on its Lanham Act claims, but rather that Plaintiff has not prevailed on establishing its entitlement to fees under that statute.

[11] This reduction still results in a substantially higher number of hours than those awarded in similar actions in this District; however the undersigned recognizes the pre-suit and settlement efforts by Plaintiff and finds that no further reduction is necessary. *See, e.g., McGlynn*, 2024 WL 4201917, at *9 (11.1 hours of attorney time reasonable in copyright infringement action resolved by default judgment); *Mouse on Tha Track, LLC v. Celcius Nightclub, LLC*, No. 2:24-cv-195-SPC-KCD, 2024 WL 4242308, at *2 (M.D. Fla. Sept. 4, 2024), *report and recommendation adopted*, No. 2:24-cv-195-SPC-KCD, 2024 WL 4235849 (M.D. Fla. Sept. 19, 2024) (30 hours of attorney time reasonable in copyright infringement action resolved by default judgment).

either the Lanham Act or the Copyright Act are those authorized under 28 U.S.C. § 1920. *See Hosp. Int'l, Inc. v. Sitaram, Inc.*, No. 3:12-cv-01145-99-MMH, 2013 WL 6798927, at \*10 (M.D. Fla. Dec. 23, 2013) ("Under 15 U.S.C. § 1117, a prevailing plaintiff is entitled to recover 'the costs of the action.'  The term 'costs of the action' is not defined by the Lanham Act.  However, the term has been interpreted as meaning the costs allowed under 28 U.S.C. § 1920." (citation omitted)); *Reiffer v. Legendary Journeys, Inc.*, No. 8:17-cv-2748-T-35AAS, 2019 WL 2029973, at \*7 (M.D. Fla. Apr. 10, 2019), *report and recommendation adopted*, No. 8:17-cv-2748-MSS-AAS, 2019 WL 2029829 (M.D. Fla. May 2, 2019) (Under 17 U.S.C. § 505, a court "may also award 'recovery of full costs' to the prevailing party in a copyright action[,]" which has been interpreted to mean costs allowable under 28 U.S.C. § 1920); *Prepared Food Photos, Inc. v. Myrtle Beach VIP Party Bus, LLC*, No. 6:23-cv-122-RBD-LHP, 2023 WL 12019550, at \*10 (M.D. Fla. Dec. 21, 2023), *report and recommendation adopted*, No. 6:23-cv-122-RBD-LHP, 2024 WL 280300 (M.D. Fla. Jan. 25, 2024) (awarding costs under the Copyright Act as limited by § 1920).

Section 1920 delineates the allowable costs as:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under 28 U.S.C. § 1923;

(6) Compensation of court appointed experts, interpreters, and costs of special interpretation services.

28 U.S.C. § 1920.

The filing fee and service of process are recoverable costs. *See* 28 U.S.C. § 1920(1); *Ramirez v. Raptor Tech. Grp., Inc.*, No. 5:12-cv-100-Oc-34TBS, 2012 WL 2589256, at *4 (M.D. Fla. June 8, 2012), *report and recommendation adopted*, 2012 WL 2586220 (M.D. Fla. July 3, 2012) (noting that service of process and filing fees are compensable under § 1920).   However, private process server fees "may be taxed pursuant to §§ 1920(1) and 1921, so long as those costs do not exceed the cost of having the U.S. Marshal's Service effectuate service[.]"   *BBY Sols., Inc. v. Livingstone*, No. 3:15-cv-1001-J-32JRK, 2016 WL 7668486, at *8 (M.D. Fla. Apr. 20, 2016), *report and recommendation adopted*, No. 3:15-cv-1001-J-32JRK, 2016 WL 7668487 (M.D. Fla. May 20, 2016) (citations and internal quotation marks omitted)).   The rate for service by United States Marshal is $65.00 per occurrence.   28 C.F.R. § 0.114(a)(3).

The undersigned seeks $759.93 in private process server fees, but provides no legal authority to support this high amount, and Attorney Wolek only states that these fees were for "multiple attempts and substitute-service steps" without further

- 39 -

explanation.   Doc. No. 27, at 29-30; Doc. No. 27-1, at 9.   Plaintiff does not provide any detailed invoices from any process server, but instead points to the redacted billing records that simply list $420.00 and $339.93 with the description "Serve Process."   Doc. No. 27-1, at 9, 34, 40.

Without more, the undersigned cannot recommend an award of the entire amount of process server fees requested, and instead will recommend that this cost be reduced to $130.00 ($65.00 each for two attempts).   *See Prepared Food Photos, Inc.* 2023 WL 12019550, at *10 (plaintiff failed to establish entitlement to costs of private process server, where plaintiff failed to submit information regarding the hourly costs for service); *BBY Sols., Inc.*, 2016 WL 7668486, at *8 (reducing requested private process server costs to $65.00 for each service attempt, for similar reasons).   *See also Ciapara v. Newline W P Servs., Inc.*, No. 6:22-cv-929-RBD-LHP, 2023 WL 5985783, at *10 (M.D. Fla. Aug. 15, 2023), *report and recommendation adopted*, 2023 WL 5983804 (M.D. Fla. Sept. 14, 2023) (same).

Plaintiff has similarly failed to support its requested $105.80 in copying costs, merely relying on Attorney Wolek's conclusory statement that the copies were "necessarily obtained" and vague entries on Plaintiff's billing records.   Doc. No. 27-1, at 9, 12-48; Doc. No. 27, at 29-30.   Without more, the undersigned declines to recommend an award of any copying costs.   *See Nicopure Labs, LLC v. Micronix Advanced Techs., Inc.*, No. 8:15-cv{a-1689-T-36TGW, 2016 WL 11783992, at *9 (M.D.

Fla. May 25, 2016) (disallowing copying costs because, "[u]nder 28 U.S.C. § 1920(4), only costs for 'copies of papers necessarily obtained for use in the case' may be taxed[,]" and the court "[was] not satisfied that plaintiff has shown the particularity required in order for the court to determine the reasonableness of the copying costs.").

## V.    RECOMMENDATION.

Based on the foregoing, I **RESPECTFULLY RECOMMEND** that the Court **GRANT in part and DENY in part** Plaintiff's motion for default judgment (Doc. No. 27), as follows:

1.    **ENTER** Default Judgment in favor of Plaintiff and against Defendant, for its claims for trademark infringement, trade dress infringement, and copyright infringement (Doc. No. 1, Counts 1-3, 8-9).

2.    **PERMANENTLY ENJOIN** Defendant, and any officers, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with Defendant, from:

> (a)    Using Plaintiff's BLIPPI Marks, or any other mark that includes any part of the BLIPPI Marks, or any other mark likely to cause confusion with the BLIPPI Marks, in connection with the promotion, advertising, offering for sale, or sale, of any goods or services;

(b)     Using the BLIPPI Trade Dress, MEEKAH Trade Dress, or any other mark that includes any part of the BLIPPI Trade Dress, MEEKAH Trade Dress, or any other mark likely to cause confusion with the BLIPPI Trade Dress or MEEKAH Trade Dress, in connection with the promotion, advertising, offering for sale, or sale, of any goods or services;

(c)     Representing, suggesting in any fashion to any third party, or performing any act that may give rise to the belief that Defendant, or any of his goods or services, are related to, authorized by, or sponsored by Plaintiff;

(d)     Using any of Plaintiff's copyrighted works, including the content of the Moonbug Copyrights and all images, with Blippi, Meekah, or any other content from the Blippi Show or that use the BLIPPI Marks;

(e) Using any name, image, and likeness of Blippi, Meekah, and any other character from the Blippi Show for any reason, including, but not limited to, as an offered service for an impersonator; and

(f) Assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to above.

- 42 -

3. **DIRECT** Defendant to remove any remaining infringing content from any websites, social media platforms, or other media under his control within fourteen (14) days of entry of judgment.

4. Further **DIRECT** Defendant to file, within **thirty (30) days** of entry of the date of any Order granting this injunction, a report describing in detail the manner and a form in which Defendant has complied with this injunction pursuant to 15 U.S.C. § 1116(a).

5. **AWARD** Plaintiff statutory damages under 15 U.S.C. § 1117(c) and 17 U.S.C. § 504(a), in the amount of $100,000.00.

6. **FIND** Plaintiff entitled to an award of fees pursuant to 17 U.S.C. § 505 in the amount of $22,565.00, and costs under 15 U.S.C. § 1117(a), 17 U.S.C. § 505, and 28 U.S.C. § 1920, in the amount of $535.00.

7. **DENY** the motion in all other respects and **DISMISS without prejudice** all remaining claims in the Complaint (Doc. No. 1, Counts 4-7).

8. **DIRECT** the Clerk of Court to enter judgment accordingly, and thereafter, to **CLOSE** the file.

## NOTICE TO PARTIES

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to serve written objections waives

that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 9, 2026.

_Leslie Hoffman Price_
LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy